Good morning. My name is Jay Toney. I represent Mr. Bonner. I don't know whether other out-of-town counsel have the problem I had this morning, but I was convinced that MapQuest had given me the wrong directions. I practiced law 35 years. I can't define what a courthouse looks like, but I know it when I see it, and this isn't it. Old Vista Del Arroyo Luxury Hotel The other thing I want to say at the beginning is that last night I found a new case out of this circuit called Bang v. State of Nevada. I provided a copy to counsel. My site is 2003 Westlaw 21205373, and I have four copies. It was decided on the 23rd of May this year, and it affirms what we say is one of the problems in this case, and that is that the procedural default is an affirmative defense under Bennett v. Mueller, and both the magistrate judge and the district judge clearly in their holdings didn't follow that dictate. So I think that it's clear that when the magistrate said that we had not made some sufficient showing on the procedural default, it was error. The second, and when we get to the nitty gritty of it, issue I think in this case is the inadequacy of counsel. He was faced with a situation where they just had a judge affirm the fact that a woman has made a decision that the defendant is guilty. A verdict has been rendered. The judge decides that he can cure this by throwing in another juror. The term... Well, it wasn't just the judge, Mr. Turner. I mean, didn't trial counsel essentially ask for the substitution? Oh, I think he did, too. This shows, I think, inadequacy of representation. Inadequacy of representation when it's the procedure that is established under California law, where you have this kind of a problem? I've had cases where there at least was some question as to what the jury was doing, and a substitution of counsel came in. That's one of the... Substitution of jurors. Pardon? You said counsel. You meant jurors. Yeah, jurors. I did. And that's one of the reasons, of course, that courts in California always say to jurors, don't tell us which way you stand. And so if there's a juror issue with a problem juror and we're not certain of how it stands, I can understand this procedure. But there wasn't a question here. It was very clear because this juror had been found by the court and by the investigator for the defense to have said that she believed that the client was psycho and guilty. And the verdict's been rendered under those conditions just after she had made these remarks. But the law says that you can still make a substitution as long as the verdict has not been returned in open court and published. The problem with it is that, as the brief points out, that there is authority for the point that when you attempt to do that, you don't have a fair panel. You don't have an impartial panel in this case. And counsel had to know that this was no longer an impartial panel. How did he have to know that? Why does he know it? Let me ask you a question. Did the jury indicate we have a verdict or verdicts? Yes. Did anybody know what they were except the jury? Clearly. In the real world, of course. What? You have to try to oversell your case. Did the jury say what the verdicts were? No, no. And so the judge didn't know what they were and the lawyers didn't know what they were. You're saying they should have guessed what it was, it was clearly going to be a guilty verdict. It's not a guess because the judge has found as credible and ruled on the fact that this one juror who is to be removed has made up her mind that he's guilty. The lawyers and the court know at the time that that juror is excused that she has issued a statement. And the judge obviously finds the evidence about that credible because he excuses her that she is going to find him guilty. So this is a little different. So you have to infer from that that the verdicts are guilt. Oh, yes. And so this is why you say it was a it was a mistake. It was incompetence of counsel to ask for substitution rather than a mistrial. Yes. Yes. He asked what the law said he was asked for, didn't he? Isn't that the rule in California? The rule in California is that you can substitute at any time. But what we're saying is that this under these conditions impacted the client's right to an impartial tribunal. He forgets about the rules as judge. I want to nuke you. I want a mistrial. Right. And the judge says mistrial denied substitute juror. Where does that put us now? Puts us in a situation where after another thing to digress is that there's been attempts unsuccessful to find the identity of the jurors in question. And that's been opposed by the government throughout in this case. But where it puts us is a juror who has improper feelings about a case. Improper opinions has stated them. And the court has found that that juror is improper, has gotten to a point where she's been in a panel that has rendered a decision. And that's different than any of the reported case law that we can find. But each juror is told this decision must be yours. You must hold it independently. So you have one bad apple. That doesn't mean that all the other apples are necessarily bad in this context, does it? Well, as we point out in our brief, there are cases that federal cases. Well, we've got the kind of cases clearly established law cases by the Supreme Court. Just give me a second. My clock's ticking. I'm not going to ask for more time on this. I believe the. Don't you have to show us that it's clearly established federal law when we look at Supreme Court cases, that the failure of the lawyer to make a mistrial motion in this situation was incompetence that registers under Strickland? I think so. But I think when in this case, the peculiar facts of it indicate that there can't be another possible verdict, realistically, other than a guilty verdict. Can you ask for this with no tactical reason for objection? You have it. Every single ineffective assistance somehow is on unique facts. And we have to use the standard law to. But what happened here is they got rid of the bad apple. Right. They put in a new juror. Right. Pursuant to California law, a procedure that was asked for by the lawyer. I know you attacked that decision. Then the jury was told, start over again. So they went back. Henry Fonda was now in the in the room and it didn't make any difference. When in one case that cited there and it slips my mind that that was one where eight of the jurors had been on us on the same case before and with another defendant and so had made up their mind coming in. And the fact that the judge obviously told them this is a new case was held to be error in that same case. Not only had that juror said before, they seem to defend it before because they've been brought in for identification. Clearly different what we have here. Well, we have it in the same sense of it's fairly clear that we have a tribunal where the fact finders have made this decision with a painted juror. And it's frankly unreasonable to think that they're going to come around. And in one hour, after four days, the first time, one hour, the second time they're back with the verdict. The last thing I'd like to say is that notwithstanding all of that, it's clear that the procedural default ruling by the court, as I see it, is error under Bennett versus Mueller in the newer cases. And since it's a Ninth Circuit case, I don't know whether you want me to provide copies of this new case, but I made up for in case you want them given. All right. We'll hear from the other side. Morning, Eric Brunkle for the state of California. I like this case, not because of the facts of the case or that woman was killed and a couple of other people were shot at, but because when I was in law school, I hated federal courts. I hated that class. I hated the federal courts class. It was one of the most difficult classes that I had because at that time, I didn't even know the difference between substantive law and procedural law. And they're throwing me in their state law, federal law, which court's supposed to decide what I ended up getting the second highest score in the class. I think I hated it so much it scared me. I wasn't learning it. That's exactly the type of case we have here. California has its own law with regard to jury substitution. California has its own law with regard to contemporaneous objections. And when we overlay the ADPA on top of it, what should pop out is exactly what popped out of the FNRs. And if the magistrate was taking federal courts and they gave him this hypothetical, he'd get an A plus for his FNRs in this case. Right down the line, perfect application. So I'm not sure what you want to hear from me. If you don't have any questions, I'm going to sit down. I did pretty well. So you're resting on the grief and the ruling in the courts below? The only thing I'd say is that I don't think the case that you were just provided with helps his position at all. And in my reading it, yeah, contemporaneous objection requirement asserted as a procedural default. As I did, I asserted it as an affirmative defense. It has to be adequate and independent. It is. It's been recognized in Bonham v. Calderon and recently by the Ninth Circuit in a case called Shen v. Shumsky. That was in March 2003. And the Strickland claim before us, is that properly before us in your view? Yes. How do we resolve the Strickland claim? There's no prejudice. Anybody who was alive would have known that the jury was about to send people to prison. So to simply ask for a new person to go in there and get overwhelmed by the other 11 was clearly a failure adequately to represent the client. The only thing that the lawyer should have done adequately to represent the client at that point was trying to get rid of this whole jury and start over again. So he should have made a motion for mistrial. Okay. I mean, I agree with him. I agree that the lawyer was in a really tight spot. What can he do? He could move for a mistrial, but as was pointed out, that'd be overruled because we have another procedure. What happened was a friend of petitioners had an opportunity to poison this jury by going over to juror number seven's house, talking to her about the case. And then calling her, he threatened her the next day. He admitted that to his friend who the trial court eventually believed. And he also told his friend that he was going to try to poison the jury so he could get a mistrial for his friend by telling the defense lawyer and the court that she discussed the case. He even said that she called the petitioner a nigger, which his friend, his friend who was there during the conversation denied she ever used that term. He made up a story about the fact that she may have been sleeping with another one of the jurors, which juror number seven denied in a later hearing, which the trial court impliedly found juror seven's testimony as to that fact to be truthful. Because after that, instead of the mistrial that he was considering, or instead of, actually, instead of pulling more jurors out of the juror room and talking to them about what she may or may not have said regarding her contact with the petitioner's friend, Thompson, regarding her possible love interest that Thompson had made up, essentially, and told the court in order to poison the jury. And get his friend a mistrial, the trial court decided not to do that. He decided that he did believe juror number seven with regard to the fact that she was not having a sexual relationship with any other jurors. He decided to believe her with regard to the fact that she did not discuss the fact that one of petitioner's friends came over to her house to talk to her with any of the other jurors. And she did not discuss the fact that this guy called her and threatened her the next morning after that contact with any of the other jurors. And the trial court essentially believed her on those points, failed to call, didn't fail, but decided in his discretion that he did not need, therefore, to call out other jurors and interview them. Essentially, he decided that the other 11 jurors who hadn't been contacted by petitioner's friend had not been exposed to what had been going on. And therefore, it was perfectly okay at that point to substitute one of the alternate jurors who had heard all the same facts, all the same testimony, obviously sitting in court. It's not the situation where we have a wholly separate jury with a wholly separate defendant that the opposing counsel mentioned earlier. It's a situation where now we have 12 jurors who heard all the same testimony, all the same evidence, who were instructed to go ahead and start deliberating anew. And was it Henry or Peter Fonda? Henry Fonda? I don't think we were going to find a Henry Fonda in this case. Even petitioner's counsel admits that determining the petitioner was the one who put the shotgun up to this woman's head and exploded her cranium would not have taken them that long to determine. Well, they were out four days the first time. Four hours. Oh, I'm sorry. He said four days. Four hours. In which I would just say they're familiarizing themselves with the jury verdicts and trying to elect a jury foreman, which all would have gone more smoothly the second time. Get the conversations about the defense lawyer's tie out of the way and all that stuff. Then you've got like an hour of deciding he killed her. He was in the van with a shotgun ready to back up his buddies that were trying to jack people in small white Toyotas to get money to get a prostitute. When that didn't work, they decided just to kidnap a woman, take her out and rape her multiple times. So I don't think that it would take them very long to decide that this guy was guilty and that all the special circumstances and all the aggravating factors were true. I'm sorry. Special circumstances. I do want to say that I take issue with counsel's determination that the magistrate's findings were consistent with applicable federal rules. The it's clear that he says that petitioner did not show an inadequacy of the procedural bar. He had the burden of proof wrong in that. And that's a ruling that was adopted by Judge Shutt and consistently showing that the procedural bar has been applied to something they cannot do. On pages 11 through 13 of the brief, we point out cases that allowed the courts to reach constitutional issues such as happened here with the failure to have a fair and impartial jury that were reached despite a lack of objection. And those are different than the evidentiary rules that are waived by lack of objection. So I think on this issue alone, the magistrate's findings and recommendations are directly in there as to what he says and with what current Ninth Circuit law is. This case is submitted and we'll take a 10 minute recess before hearing.
judges: Trott, Tallman, Collins